# EXHIBIT B

FILED
10/2/2025
Timothy W Fitzgerald
Spokane County Clerk

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SPOKANE

| | |
|---|---|
| JESSICA L. JACKSON, on her own behalf and on behalf of others similarly situated,<br>Plaintiff,<br>vs.<br>HANESBRANDS, INC.,<br>Defendant. | Case No.: 25-2-04876-32<br>CLASS ACTION COMPLAINT<br>JURY TRIAL DEMANDED |

Plaintiff Jessica L. Jackson, on her own behalf and on behalf of others similarly situated, on information and belief except to her own experiences and matters of public record, complains of Defendant Hanesbrands, Inc. ("Hanes") as follows:

## I. INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2. Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW 19.190.020(1)(b).



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

3. Defendant Hanes engages in the precise activity which CEMA prohibits.

4. Hanes spams Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6. And through this deceptive time-sensitivity, Hanes falsely narrows the field—steering consumers away from shopping for better deals—to its own products and services which must be purchased *now*.

7. Plaintiff challenges the defendant's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in Spokane County under RCW 4.12.020(3) because Defendant is an entity registered in Spokane County, Washington.

## III. PARTIES

10. Plaintiff Jessica Jackson is a resident of Thurston County, Washington.

11. Defendant Hanesbrands, Inc., is a Maryland corporation with its principal address at 101 N. Cherry St., Winston-Salem, NC, 27101, with a registered agent in Washington State: United Agent Group, Inc., 707 W. Main Ave., #B1, Spokane, WA, 99201.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

## IV. FACTUAL ALLEGATIONS

### A. CEMA protects Washington consumers from deceptive spam emails.

12. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14. While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19. Consumers therefore routinely "consent" to receive flurries of commercial emails



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

which they did not meaningfully request and in which they have no genuine interest.

20. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

26. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of Hanes' marketing emails make false time scarcity claims.**

29. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

31. "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture, supra* para. 29, at 27.

32. Representations about the timing and duration of sales, discounts, and other special



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

34. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

36. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

38. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

39. These false time scarcity claims are a staple of the defendant's email scheme to compel consumers to purchase its products.

40. **Urgent Spam Emails.** Hanes is practiced in this trick of luring in consumers



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

through urgent subject headings in emails that do not reflect the true availability of the deal itself, as the examples below demonstrate.

41. The defendant's use of false time scarcity claims to entice consumers to purchase its products is no more readily apparent than in its free shipping promotions.

42. For example, on October 25, 2024, Hanes informed consumers of a new shipping offer by transmitting an email with the subject line: "No Tricks, Just FREE Shipping!"

43. On the contrary, the October promotion would exemplify the precise trickery that so often plagues this retailer's deceptive spam campaigns.

44. The following day, on October 26, 2024, Hanes sent consumers two additional emails reminding them of the free shipping offer. The respective subject lines were: "All Your Fave Bras Ship FREE 🚚" and "🎃 Absolutely Everything SHIPS FREE!"

45. The real trickery began thereafter.

46. After spamming consumers with those reminder emails, Hanes then decided to use the subject line of its October 27, 2024, email, "Don't Wait, FREE Shipping Ends Tmrw!" to exert false time pressure upon recipients. Even the abbreviated use of the word "tomorrow" as "Tmrw" connotes urgency, as though the sender was so short on time, they couldn't spare the additional second needed to complete the full word.

47. Hanes would ratchet up that pressure again the following day, October 28, 2024, with two additional deceptive marketing emails. The first message, titled, "📣 LAST DAY! Sitewide Free Shipping" was sent in the early morning. Later in the day, Hanes sent yet another warning in an email with the subject line: "⏰ Only Hours Left for FREE Shipping!"

48. Regardless of whether they succumb to the time pressures that Hanes' emails thrust upon them, consumers might expect a promotion's conclusion to end the barrage of messages



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

concerning that offer. Those consumers would be wrong.

49. Within days, Hanes returned to consumer inboxes with an October 31, 2024, email titled: "🎃 Happy Halloween! SHIP FREE Today Only[.]" While the body of the message invited recipients to "Trick or Treat Yourself!" Hanes was quite clearly the party opting for deceit. Mere days after pelting consumers with warnings of the promotion's impending expiration, Hanes was back in their inbox with an identical offer. The October 31 subject line confirms that the urgency deployed in Hanes' October 27 and 28 emails was nothing more than fabrication meant to compel consumers to buy fast lest they lose the supposedly scarce opportunity.

50. Wont to let a holiday pass without warning consumers of promotional deadlines, Hanes was back at it for St. Patrick's Day.

51. On March 26, 2025, Hanes utilized another call to urgency in an email sent to consumers with the subject line: "Hurry, Free Shipping with Code GREEN Ends Tmrw!"

52. Consistent with its typical strategy, on March 17, 2025, Hanes layered additional pressure onto consumers by transmitting at least two emails with subject lines reiterating the time scarcity of the shipping offer: "Last Chance to Get Lucky with Free Shipping 🍀" and "The Jig Is Up! Free Shipping Ends Today[.]"

53. A jig indeed. The dance, though, didn't end on March 17. Proof that Hanes misled consumers would not arrive until March 21, 2025, in an email titled: "🎉 Panty-palooza! 10/$40 Undies[.]" Within the body of that message, Hanes advised "everything ships free[.]"

54. Thus, despite Hanes' March 27 representation that its free shipping offer was subject to time limits, it quickly transmitted the same offer again, a mere four days later.

55. However, to the detriment of consumers, the jig was anything but up.

56. A few days later, on March 24, 2025, Hanes would deploy its strategy yet again in



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

two separate emails meant to pressure consumers using the subject lines: "⏰ Tick, Tock! FREE Shipping Ends Today" and "Last Call 🔔 Free Shipping Ends Tonight!"

57. And, yet again, those subject lines would prove deceptive.

58. On March 28, 2025, mere days later, Hanes sent an email titled: "Flash Sale ⚡ This Weekend Only!" The message's contents stated, "everything ships free!" The lightning emoji emphasized the ephemeral nature of an offer that is "striking" now.

59. The March 28, 2025, message confirmed that the March 24 emails were anything but a "last call." They were simply repeat examples of the defendant's deceptive strategy: manufacturing false pressure meant to drive consumers to its website and, ultimately, the checkout screen.

60. Wrapping its misleading message in a patriotic theme, Hanes repeated its trick in a May 26, 2025, message titled: "Last Chance! us Let Free Shipping Ring[.]" The text within the message reinforced the subject line, announcing that the promotion was on its last day in a banner placed above the American flag.

61. That warning would ring hollow. The following day, May 27, 2025, Hanes confirmed the falsity of the May 26 email in a message with the heading: "EXTENDED! Free Shipping on All Orders[.]"

62. Upon information and belief, shipping costs are significant enough to influence the purchasing decisions for many, if not most, consumers. An offer of time-limited free shipping entices customers to shop and pay more now lest they miss out on cheaper shipping. As these promotions demonstrate, Hanes employs a strategy where it pressures consumers to purchase its products by falsely representing the limited availability of its shipping offers; offers that are repackaged, repeated, and redeployed.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

63. Hanes does not limit its false time pressure strategy to promoting shipping offers. Instead, it custom fits its deceptive approach to suit a variety of promotions.

64. For example, Hanes sent a December 3, 2024, email advertising savings on a variety of products as part of its Cyber Deals promotion. The email's subject line warned: "🎬 Cut! Cyber Deals End Tonight[.]"

65. Upon information and belief, time pressures such as those deployed by Hanes are even more effective in the latter months of the year when consumer spending is at its highest and the holidays are fast approaching.

66. True to form, Hanes leveraged such urgency against consumers twice, regarding the same Cyber Deals promotion. On December 4, 2024, Hanes sent another email announcing that the promotion had not ended. The subject line of the email proclaimed: "NOW EXTENDED! Cyber Deals Up To 50% Off[.]"

67. Consumers in receipt of the December 3, 2024, email were not at risk of missing the deal, had they ignored the subject line, because Hanes did not end the promotion on December 3. The false conclusion of the Cyber Deals offer was simply a marketing strategy meant to compel consumers to purchase the defendant's products.

68. Hanes stretches its deceptions to fit other holidays as well.

69. On May 11, 2025, Hanes transmitted an email with the subject line: "💐 Happy Mother's Day! Extra 20% Off Ends Today[.]"

70. However, the claim made in the email's subject line was untrue.

71. The very next day, on May 12, 2025, Hanes transmitted another email titled: "LAST DAY! Extra 20% Off Sitewide[.]" The May 12 email confirms the falsity of the May 11 message. Despite the contrived time scarcity, consumers in fact had an additional day during which



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

they could accept the defendant's offer.

72. Hanes also tailors its misleading strategy for use in promoting specific products. The 18 Hour Bra, for example.

73. On July 3, 2022, Hanes sent consumers an email with the subject line: " Ends Soon: $14.99 Playtex 18 Hour Bras!" Text within the email indicates the price is offered as part of a "big summer sale." Fine print at the bottom of the message states the pricing is valid until 11:59 that evening.

74. Within days, the same pricing would be available again as reflected in a July 8, 2022, email sent to consumers with the heading: "It's Time to Sale-A-Brate You 🎉 [.]" Yet again indicating that the offer was only for a limited time, the email message presented the 18 Hour Bra for $14.99. The pricing available in the July 3 email was clearly in no jeopardy of ending.

75. Indeed, the defendant's deception concerning the product's pricing would endure for 18 hours and well beyond.

76. Hanes revived the allegedly limited pricing again in a July 18, 2022, email titled: "Last Call for $14.99 Bras [.]" An image inside the message confirmed that 18 hour bras were included in the $14.99 offer.

77. An unaware underwear consumer might be compelled to act in response to Hanes' misleading warning. However, there was nothing scarce about the $14.99 offer.

78. While the July 18 message declared itself a "last call," the defendant's deceitful marketing campaign was effectively on spin cycle. The falsity of the July 18 subject line was made clear by Hanes' July 31, 2022, email titled: "Limited Time Only: $14.99 Bras!" The contents of the message confirm it was the Playtex 18 Hour Bras that were subject to the limited pricing.

79. Despite Hanes' repetitive warnings, consumers would have regular access to 18



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

Hour Bras at the $14.99 pricing as demonstrated in subject lines sent in the months to follow:

a. July 31, 2022: "Limited Time Only: $14.99 Bras!"

b. August 28, 2022: "$14.99 Bras— Limited Time for Labor Day"

c. September 3, 2022: "Hurry, $14.99 Bras Won't Last Long!"

d. October 8, 2022: "LIMITED TIME ONLY: Playtex 18 Hour Bras $14.99"

e. October 16, 2022: "LAST CHANCE for $14.99 Playtex 18 Hour Bras!"

f. December 17, 2022: "ENDS TMRW: Playtex 18 Hour Bras $14.99"

80. Thus, Hanes used its spam email campaign to consistently warn consumers that the availability of $14.99 pricing was scarce, even though the same offer would be available well into the future at different intervals as determined by Hanes.

81. As these subject lines demonstrate, Hanes engages in an email marketing strategy whereby it creates a false sense of urgency, misrepresents when sales end, advertises time-limited free shipping, and strategically extends or revives those sales to pull in consumers with subject headings misrepresenting the availability of deals.

82. These and other examples of the commercial emails that Hanes has sent consumers containing subject lines with false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C. Hanes knows when it sends emails to Washington residents.**

83. A sophisticated commercial enterprise, like Hanes, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

84. First, the sheer volume of email marketing that Hanes engages in put it on notice



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

that Washington residents would receive its emails. From 2022 to 2024, Hanes sent marketing emails at a rate averaging roughly: 638 per year, 53 per month, and 1.75 per day.

85. Second, Hanes may obtain location information tied to email addresses when consumers make purchases from Hanes through digital platforms, including the Hanes website, or otherwise self-report such information to Hanes.

86. Third, Hanes may obtain location information tied to email addresses by tracking the IP addresses of devices used to open its emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

87. Specifically, Hanes likely uses dotdigital to manage its email marketing campaigns. This platform should allow Hanes to access a list of every email address that was sent a marketing email. It should also allow Hanes to determine who viewed each of the emails and who clicked on any links within them.

88. Hanes is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

89. Fourth, Hanes may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

90. Fifth, Hanes may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

91. Sixth, Hanes may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

92. It is thus highly probable that a seller with the size and sophistication of Hanes employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D. Hanes violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

93. Hanes has spammed Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.

94. Plaintiff received a number of the email promotions described above in Section B, including the December 3, 2024, email titled: "🎬 Cut! Cyber Deals End Tonight"; the March 17, 2025, email titled: "Last Chance to Get Lucky with Free Shipping 🍀"; and the May 26, 2025, email titled: "Last Chance! us Let Free Shipping Ring[.]"

95. These emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals, as described herein.

96. These emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

97. Plaintiff bring this action under Civil Rule 23 on behalf of the following putative class ("Class"):



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

98. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

99. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

100. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

101. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

102. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

103. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

putative members.

104. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

105. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

106. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

107. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI. CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

108. Plaintiff incorporates and realleges paragraphs 1–96 above.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

109. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

110. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

111. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

112. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(b)(2).

113. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

114. For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

**<u>Second Claim to Relief</u>**

**Violation of the Consumer Protection Act, RCW 19.86.020**

115. Plaintiff incorporates and realleges paragraphs 1–96 above.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

116. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

117. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

118. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

119. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

120. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

121. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

122. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

123. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

124. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

125. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff's costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

*[Attorney signature block to follow on next page.]*



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

DATE: October 2, 2025

Respectfully submitted,

*/s/ Samuel J. Strauss*

Samuel J. Strauss, WSBA No. 46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nylons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff*

* Applications for admission *pro hac vice* forthcoming

# — EXHIBIT A —

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SPOKANE

JESSICA L. JACKSON, on her own behalf and on behalf of others similarly situated,

Plaintiff,

vs.

HANESBRANDS, INC.,

Defendant.

Case No.: ______________________

CLASS ACTION COMPLAINT

EXHIBIT A

| Date | Subject Line |
|---|---|
| 7/3/22 | 🎉 Ends Soon: $14.99 Playtex 18 Hour Bras! |
| 7/18/22 | Last Call for $14.99 Bras 🎉 |
| 10/27/24 | Don't Wait, FREE Shipping Ends Tmrw! |
| 10/28/24 | 🎉 LAST DAY! Sitewide Free Shipping |
| 10/28/24 | ⏰ Only Hours Left for FREE Shipping! |
| 12/3/24 | 🎬 Cut! Cyber Deals End Tonight |
| 3/16/25 | Hurry, Free Shipping with Code GREEN Ends Tmrw! |
| 3/17/25 | Last Chance to Get Lucky with Free Shipping 🍀 |
| 3/17/25 | The Jig Is Up! Free Shipping Ends Today |
| 3/24/25 | Last Call 🎉 Free Shipping Ends Tonight! |
| 3/24/25 | ⏰ Tick, Tock! FREE Shipping Ends Today |



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

| | |
|---|---|
| 5/11/25 | Happy Mother's Day! Extra 20% Off Ends Today |
| 5/12/25 | LAST DAY! Extra 20% Off Sitewide |
| 5/26/25 | Last Chance! us Let Free Shipping Ring |



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com