HON. CHIEF JUDGE STANLEY A BASTIAN

Samuel J. Strauss
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com

*Of Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
## AT YAKIMA

| | |
|---|---|
| JESSICA L. JACKSON, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HANESBRANDS, INC.,<br><br>Defendant. | Case No. 2:25-cv-00440-SAB<br><br>**RESPONSE TO MOTION TO DISMISS**<br><br>MOTION HEARING DATE: 3/26/26 AT 11:00AM BY VIDEO |

### <u>PLAINTIFF'S RESPONSE TO MOTION TO DISMISS</u>

1

## <u>TABLE OF CONTENTS</u>

2

INTRODUCTION ...................................................................................1

3

FACTUAL & PROCEDURAL BACKGROUND .....................................1

4

STANDARD OF REVIEW ......................................................................3

5

ARGUMENT ..........................................................................................4

6

7
   I.   Plaintiff's CEMA Claims are Well Pled. .......................................4

8
   II.   CAN-SPAM Does Not Preempt Plaintiff's Claims. ....................9

9
   III.   CEMA is Constitutional. ............................................................15

10
   IV.   Hanes' Remaining Arguments Do Not Mandate Dismissal. ......19

11

CONCLUSION .....................................................................................20

12

13

14

15

16

17

18

19

20

21

*Jackson v. Hanesbrands, Inc.*

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                                          **Page(s)**

3    *Adams v. King Cnty.*,
        164 Wash. 2d 640, 192 P.3d 891 (2008)...................................................................13

4    *Andrews v. Conversion Squared Corp.*,
        2020 WL 3978063 (C.D. Cal. May 8, 2020) .........................................................11

5    *Asis Internet Servs. v. Vistaprint USA, Inc.*,
        617 F. Supp. 2d 989 (N.D. Cal. 2009) ...................................................................10

6    *Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007).................................................................................................3

7

8    *In re California Bail Bond Antitrust Litig.*,
        511 F. Supp. 3d 1031 (N.D. Cal. 2021) ...................................................................6

9    *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*,
        567 P.3d 38 (Wash. 2025)....................................................................................1, 6

10   *Concha v. London*,
        62 F.3d 1493 (9th Cir. 1995) ...................................................................................9

11   *Elcon Const., Inc. v. E. Washington Univ.*,
        174 Wash. 2d 157, 273 P.3d 965 (2012).................................................................15

12

13   *Ferguson v. Quinstreet, Inc.*,
        2008 WL 3166307 (W.D. Wash. Aug. 5, 2008), *aff'd*, 348 F. App'x 255 (9th
        Cir. 2009) ...............................................................................................................12

14   *Flynt v. Bonta*,
        131 F.4th 918 (9th Cir. 2025) ...........................................................................16, 17

15

16   *Gordon v. Impulse Mktg. Grp., Inc.*,
        375 F. Supp. 2d 1040 (E.D. Wash. 2005) ..............................................................12

17   *Gordon v. Virtumundo, Inc.*,
        575 F.3d 1040 (9th Cir. 2009) .........................................................10, 11, 12, 15

18   *Guardant Health, Inc. v. Natera, Inc.*,
        580 F. Supp. 3d 691 (N.D. Cal. 2022) ..................................................................4, 9

19   *Harbers v. Eddie Bauer, LLC*,
        415 F. Supp. 3d 999 (W.D. Wash. 2019).................................................................20

20   *Harrington v. Vineyard Vines, LLC*,
        __ F. Supp. 3d __, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ...........6, 9, 12

21

RESPONSE TO MOTION TO
DISMISS                              *Jackson v. Hanesbrands, Inc.*
                                                    iii

*Kousisis v. United States*,
   145 S. Ct. 1382 (2025)...........................................................................14, 15

*Littlejohn v. Kaiser Found. Health Plan of Washington*,
   No. 3:23-CV-06194-TMC, 2024 WL 4451955 (W.D. Wash. Oct. 9, 2024)............................7

*Ma v. Nike, Inc.*,
   No. 2:25-cv-01235-JLR, __ F. Supp. 3d __, 2026 WL 100731 (W.D. Wash.
   Jan. 14, 2026)...........................................................................9, 12, 15

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ...................................................................4

*Martin v. Miller*,
   24 Wash. App. 306, 600 P.2d 698 (1979)..........................................................15

*Mason v. Mortg. Am., Inc.*,
   114 Wash. 2d 842, 792 P.2d 142 (1990)...........................................................20

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) .................................................................4, 7

*Nat'l Pork Producers Council v. Ross*,
   456 F. Supp. 3d 1201 (S.D. Cal. 2020), *aff'd*, 6 F.4th 1021 (9th Cir. 2021),
   *aff'd*, 598 U.S. 356 (2023) ..................................................................16, 17

*Nat'l Pork Producers Council v. Ross*,
   6 F.4th 1021 (9th Cir. 2021) .............................................................16, 17, 19

*Okanogan Highlands All. v. Crown Res. Corp.*,
   492 F. Supp. 3d 1149 (E.D. Wash. 2020) .......................................................7, 8

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) ..................................................................18

*Sams v. Yahoo! Inc.*,
   713 F.3d 1175 (9th Cir. 2013) ..................................................................14

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*,
   64 Wash. App. 553, 825 P.2d 714 (1992)..........................................................20

*Silverstein v. Keynetics Inc.*,
   2016 WL 7475616 (N.D. Cal. Dec. 29, 2016), *aff'd*, 727 F. App'x 244 (9th
   Cir. Mar. 6, 2018) .............................................................................11

*Smith v. Anastasia Inc.*,
   2014 WL 12577598 (S.D. Cal. Sept. 15, 2014).....................................................10

RESPONSE TO MOTION TO DISMISS

*Jackson v. Hanesbrands, Inc.*

iv

*State v. Heckel,*
    143 Wash. 2d 824, 24 P.3d 404 (2001) (*en banc*) ................................11, 17, 18, 20

*The Real Est. Bar Ass'n For Mass., Inc. v. Nat'l Real Est. Info. Servs.,*
    608 F.3d 110 (1st Cir. 2010) ................................................................16

*U.S. Commodity Futures Trading Comm'n v. Monex Cred. Co.,*
    931 F.3d 966 (9th Cir. 2018) ..........................................................14, 16

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.,*
    76 F.4th 1164 (9th Cir. 2023) ................................................................14

*Wagner v. Spire Vision,*
    2014 WL 889483 (N.D. Cal. Mar. 3, 2014) ..............................................10

*Young v. Toyota Motor Sales, U.S.A.,*
    442 P.3d 5 (Wash. Ct. App. 2019) ............................................................5

**Statutes**

15 U.S.C. § 7701 ....................................................................................9

15 U.S.C. § 7707 ........................................................................10, 12, 13

Wash. Rev. Code Ann. § 19.190.020 ................................................ *passim*

Wash. Rev. Code Ann. § 19.190.030 ........................................................20

**Other Authorities**

5C Charles A. Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1363 (3d ed.) .....................7

Fed. R. Civ. P. 5.1 ..................................................................................3

Rule 8 ....................................................................................................3

Rule 9 ................................................................................................9, 13

Rule 12 ............................................................................................ *passim*

1
2
3
4
5
6
7
8

## **INTRODUCTION**

This case is about an online retailer sending deceptive marketing emails in violation of Washington state law. Plaintiff Jessica L. Jackson ("Jackson" or "Plaintiff") respectfully submits this response brief to Defendant Hanesbrands, Inc.'s ("Hanes") Motion to Dismiss. ECF No. 16, 17. Hanes offers a kitchen-sink of arguments to contend that this case should be dismissed under Rule 12, throwing constitutional and preemption arguments at the wall to see what sticks. None of these arguments bears. This case should proceed and this motion should be denied.

9

## **FACTUAL & PROCEDURAL BACKGROUND**

10
11
12
13
14
15
16
17
18
19
20
21

Hanes is an online retailer selling undergarments and brassieres that employs deceptive email practices to lure consumers into thinking promotions are ending when they are not. ECF No. 1-2 at ¶¶ 40, 41, 53, 62, 73, 79. As pled, Hanes violated the Commercial Electronic Mail Act ("CEMA"), Wash. Rev. Code Ann. § 19.190.020, by sending commercial emails with misleading subject lines to consumers, including Plaintiff. *Id.* at ¶¶ 4–7. CEMA protects Washington residents from commercial emails with any false or misleading information in the subject lines. *See generally Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025). Hanes engages in this practice of sending false time scarcity emails, which extend promotions beyond the dates originally referenced in earlier promotions. ECF No. 1-2 at ¶¶ 32–39. Time

scarcity promotions carry effective psychological resonance because they tap into consumers' desire not to miss deals. *Id.*

The spam scheme employed by Hanes fills consumers' inboxes with junk mail, littered with promotional subject headings that falsely state when sales are ending. The Complaint exhaustively catalogues examples of this conduct, but a few examples are particularly poignant. On October 27, 2024, Hanes sent consumers a commercial email with the subject heading: "Don't Wait, FREE Shipping Ends Tmrw!" ECF No. 1-2 at ¶ 46. The next day, October 28, 2024, Hanes sent other emails to gin up urgency around the promotion, stating: "👇 LAST DAY! Sitewide Free Shipping" and later "🔴 Only Hours Left for FREE Shipping!" ECF No. 1-2 at ¶ 47. But it wasn't the final day for this promotion. Within days, Hanes offered the same deal for free shipping in other emails. ECF No. 1-2 at ¶ 49. Offers of free shipping like these are particularly alluring for consumers. ECF No. 1-2 at ¶ 62.

Hanes employs these same time scarcity tactics in promoting its products. On December 3, 2024, Hanes sent a promotional email with the subject heading: "🎬 Cut! Cyber Deals End Tonight[.]" ECF No. 1-2 at ¶ 64. But the promotion did not end that evening. The next day, December 4, 2024, Hanes sent another email stating in the subject heading: "NOW EXTENDED! Cyber Deals Up To 50% Off[.]" ECF No. 1-2 at ¶ 66. This second email confirms that the first email contained false and misleading information. ECF No. 1-2 at ¶ 67. Hanes has employed this strategy for

RESPONSE TO MOTION TO DISMISS    *Jackson v. Hanesbrands, Inc.*
2

years in selling other products like brassieres. ECF No. 1-2 at ¶¶ 72–80. Plaintiff Jessica Jackson received a number of these emails. ECF No. 1-2 at ¶ 94.

This is not simply clever marketing or an innocent business practice – this is a calculated strategy to sway consumer behavior based on information the retailer knows to be wrong. Hanes feeds consumers false information likely to make them act quicker to obtain a certain deal. The information in the subject line of the first email is not mere puffery or a clever ad out of *Mad Men* – it is a deceptive and false strategy to increase Hanes's bottom line to the detriment of its customers. This scheme exploits consumers' psychological tendencies to react to scarcity and act faster to buy products. The Washington legislature created a remedy for such conduct decades ago, and Plaintiff seeks relief under that law.

Plaintiffs initially filed this case in state court on October 2, 2025. ECF No. 1-2. Hanes invoked the jurisdiction of this Court and removed the case on November 11, 2025. ECF No. 1. On December 12, 2025, Hanes moved to dismiss and noticed a constitutional question under Fed. R. Civ. P. 5.1. ECF Nos. 16, 17.

**STANDARD OF REVIEW**

Rule 8(a)(2) requires only a short and plain statement of the claim giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and

1  construe the pleadings in the light most favorable to the nonmoving party."

2  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

3  All reasonable inferences are to be drawn in the pleader's favor. *Moss v. U.S. Secret*

4  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *Guardant Health, Inc. v. Natera, Inc.*, 580

5  F. Supp. 3d 691, 702 (N.D. Cal. 2022).

6  ## ARGUMENT

7  Hanes raises three arguments in its Motion to Dismiss: that Plaintiff's claims

8  under CEMA are inadequately pled, that CEMA is preempted by a federal law, and

9  that CEMA is unconstitutional. ECF No. 16. These arguments ignore the plain text

10  of applicable statutes, the Complaint and numerous decisions on point holding that

11  CEMA is not preempted and is not unconstitutional. This is a well-pled Complaint

12  asserting specific violations of a statute designed to protect Washington consumers.

13  This motion should be denied.

14  **I.    Plaintiff's CEMA Claims are Well Pled.**

15  Hanes reaches deep into the bottom of the barrel to come up with three reasons

16  that Jackson's claims do not properly allege a CEMA violation: Plaintiff didn't

17  receive "all" the emails, the emails were not misleading, and Hanes did not know

18  she was a Washington resident. ECF No. 16 at PageID# 241. The first issue

19  (receiving "all" the emails) does not matter; the second issue (were the emails

20

21

1    misleading?) has been pled (yes, they were) and anyway, should not be resolved at

2    this stage; and the third issue (knowledge) is more than sufficiently alleged.

3        Hanes first says that Plaintiff cannot assert a CEMA claim for emails she did

4    not receive. ECF No. 16 at PageID# 241–42. This is a putative class action alleging

5    a coordinated campaign and scheme to deceive consumers. *E.g.*, ECF No. 1-2 at ¶¶

6    39, 43, 83. Plaintiff explicitly pled in the Complaint that some of the emails

7    discussed were *examples* of the scheme by which Hanes violates CEMA. ECF No.

8    1-2 at ¶ 40. And a single email transmitted with "false or misleading information in

9    the subject line" violates CEMA, which does not refer to a campaign of marketing

10   emails or a gaggle (or other fixed number) of emails sufficient to trigger liability,

11   but explicitly uses the phrase "**a** commercial email." Wash. Rev. Code Ann. §

12   19.190.020(1) (emphasis added). This argument is a way for Hanes to fill space –

13   not to dismiss this case. Even if Plaintiff cannot recover for emails she did not

14   receive, she is the master of her complaint and can illustrate how Hanes' deceptive

15   practices might inform treatment of a class that includes her. Nor can Hanes

16   preemptively curtail the cognizable claims of unnamed, putative members by

17   requiring Plaintiff to plead only those emails that it dumped into her inbox.

18       Second, Hanes baldly alleges that the emails in question are not false or

19   misleading. A statement may be literally true but nevertheless actionably misleading

20   if it is "likely to mislead a reasonable consumer." *Young v. Toyota Motor Sales,*

21

*U.S.A.*, 442 P.3d 5, 9 (Wash. Ct. App. 2019) (internal quotation marks omitted). Whether a representation is false or misleading is a question of fact unsuited for a motion to dismiss. *See Harrington v. Vineyard Vines, LLC*, __ F. Supp. 3d __, 2025 WL 3677479, at *1 n.3 (W.D. Wash. Dec. 18, 2025) ("Whether a statement is false or misleading is, however, a question of fact.") (denying motion to dismiss CEMA claims); *see also In re California Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1045 (N.D. Cal. 2021) ("Whether a statement is misleading, however, is a question of fact that should not be resolved on a motion to dismiss.") (analyzing issue under Ninth Circuit caselaw). This question should not be resolved now.

Hanes' analysis of its own emails is also wrong on its face. Hanes says that Plaintiff's position is that "extending a promotion violates CEMA" and that "[t]his cannot be the law." ECF No. 16 at PageID# 242. Extending a promotion does not violate CEMA – but *lying* about the deadline of a promotion likely does. *Brown*, 4 Wash. 3d at 596 (CEMA violation where subject line misleads consumers about "*the duration or availability* of a promotion"). And that is exactly what the Complaint alleges Hanes is doing. ECF No. 1-2 at ¶¶ 4–7. This case is not about market conditions. It is about email headings that Hanes knows to be false when it sends them, stating in one email that a Mother's Day promotion is ending on a certain day when in fact it is not (as confirmed by an email the very next day offering the same promotion). ECF No. 1-2 at ¶¶ 69–71. Deciding to end a promotion may be a wise

1  or inadvisable business approach. CEMA is agnostic to that choice. It addresses

2  when companies sending commercial emails make false or misleading statements in

3  advertising those promotions. Hanes is wrong to assert that CEMA prohibits

4  extending a promotion – just the lying part is what CEMA addresses.

5         Hanes then asserts that Plaintiffs fail to allege any facts showing the email

6  subject lines were false when made. ECF No. 16 at PageID# 242–43. But Hanes

7  walks right into the standard on motions to dismiss when it says, "Plaintiff cannot

8  ignore the *plausible alternative explanation*…" *Id.* "Plausible alternative

9  explanations" are not fodder for Rule 12 motions, where the Court must draw all

10  inferences in favor of the Plaintiff – not Hanes. *Moss v. U.S. Secret Serv.*, 572 F.3d

11  962, 969 (9th Cir. 2009); *Littlejohn v. Kaiser Found. Health Plan of Washington*,

12  No. 3:23-CV-06194-TMC, 2024 WL 4451955, at *3 (W.D. Wash. Oct. 9, 2024); 5C

13  Charles A. Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1363 (3d ed.) ("The

14  general rule articulated in countless judicial opinions and noted in the notes to the

15  discussion above is that *all* reasonable factual inferences will be drawn to aid the

16  pleader and ambiguities will be resolved in the pleader's favor.") (emphasis added).

17  At this stage, *any* "alternative plausible explanations" offered by Hanes are neither

18  appropriate nor warranted. A statement like "last chance" is not mere puffery – it is

19  a statement of fact relating to the duration and timeliness of a promotion. The Court

20  should decline Hanes' invitation to engage in speculation of what "alternative

21

RESPONSE TO MOTION TO DISMISS      *Jackson v. Hanesbrands, Inc.*

7

1    explanations" might exist for the plain words Hanes chose to put in the subject

2    heading of its emails. Even taken on their own terms, however, Hanes' no-falsity

3    arguments do not entitle it to dismissal. Hanes is trying to argue on the back end that

4    its bait-and-switch email marketing tactics are not actually deceptive. Not only is

5    that a position taken solely for its litigation position, but it defies common sense.

6    Telling someone that this is the "last chance" to take advantage of a promotion

7    invokes imminence, and if the actual deadline for the promotion is not imminent, the

8    contrary representation by Hanes is false or misleading—plain and simple.

9        Third, Hanes asserts that Plaintiff insufficiently alleges Hanes' knowledge

10   that its emails were going to Washington residents. ECF No. 16 at PageID# 244–45.

11   The material in Plaintiff's Complaint regarding knowledge is not idle speculation or

12   armchair guessing about Hanes' email marketing practices. Plaintiff identified the

13   specific email marketing management platform used by Defendant: Dotdigital. ECF

14   No. 1-2 at ¶ 87. And Plaintiff specifically explains how such technology can identify

15   email recipients' locations. ECF No. 1-2 at ¶¶ 83, 85, 86, 88, 89, 90, 91. Despite

16   Hanes' remonstrations to the contrary, that is not conjecture. These are simply well-

17   pled facts that the Court must accept as true at the Rule 12 stage. *Okanogan*

18   *Highlands All. v. Crown Res. Corp.*, 492 F. Supp. 3d 1149, 1153 (E.D. Wash. 2020).

19   In addition to identifying the exact software Hanes uses for marketing and discussing

20   what it can do, the Complaint identifies *six* separate ways that Hanes could be using

21

RESPONSE TO MOTION TO DISMISS      *Jackson v. Hanesbrands, Inc.*
8

other technologies to identify where email recipients live. ECF No. 1-2 at ¶¶ 83–92. What threshold is Hanes proposing as "sufficiently pled" for knowledge before discovery has even started? Ten ways? Twenty? Knowledge is more than sufficiently alleged here.[1] The Complaint demonstrates a repeated pattern of Defendant spamming consumers with emails containing subject lines with substantially the same false-time messaging. At this stage, it is an eminently "reasonable inference" that Hanes acted with intention and knowledge. *Natera* 580 F. Supp. 3d at 702. Plaintiff need not prove her case on knowledge before discovery.

## II.    CAN-SPAM Does Not Preempt Plaintiff's Claims.

Hanes is simply wrong that CAN-SPAM, 15 U.S.C. § 7701, preempts CEMA in this case. ECF No. 16 at PageID 245–51. Multiple federal courts in Washington have held in the past few weeks that CEMA is not preempted by CAN-SPAM. *See, e.g.*, *Ma v. Nike, Inc.*, No. 2:25-cv-01235-JLR, __ F. Supp. 3d __, 2026 WL 100731, at *3 (W.D. Wash. Jan. 14, 2026) (holding similar claims were not preempted); *Harrington v. Vineyard Vines, LLC*, __ F. Supp. 3d __, 2025 WL 3677479, at *1 (W.D. Wash. Dec. 18, 2025) ("The provision of CEMA on which plaintiffs' claims are premised is not preempted by CAN-SPAM."). This caselaw is recent and on

---

[1] Even under Rule 9(b), which is not at issue in this case, state of mind may be pled without specificity. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).

RESPONSE TO MOTION TO DISMISS

*Jackson v. Hanesbrands, Inc.*

9

1    point, and this Court need look no further to resolve this aspect of Hanes' motion.

2    Both of these cases further develop and apply the law as articulated by the Ninth

3    Circuit in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009).

4    Court after court before and after the Ninth Circuit's decision in *Virtumundo*

5    has concluded: statutory and common law claims that attack "falsity and deception"

6    (§ 7707(b)(1)) broadly in commercial email are not preempted.[2] The question in

7    *Virtumundo* was "[w]hether the exception language of § 7707(b) permits states to

8    prohibit e-mail activity that is *not* unfair or deceptive." 575 F.3d at 1062 n.21.

9    Unsurprisingly, the court's answer was no.

10   *Virtumundo* involved CEMA's "point of origin" provision, which prohibits

11   "misrepresent[ing] or obscur[ing] any information in identifying the point of origin

12   or the transmission path" of commercial email. RCW § 19.190.020(1)(a); *see*

13   *Gordon*, 575 F.3d at 1058. CAN-SPAM, by contrast, as interpreted in light of its

14   text, structure, and purpose, *see id.* at 1061, does not authorize liability for "bare

15

16   [2] *See, e.g.*, *Asis Internet Servs.*, 2009 WL 4723338, at *3–4; *Asis Internet Servs. v.*

17   *Vistaprint USA, Inc.*, 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009);

18   *Consumerbargaingiveaways*, 622 F. Supp. 2d at 944; *Smith v. Anastasia Inc.*, 2014

19   WL 12577598, at *2–3 (S.D. Cal. Sept. 15, 2014); *Wagner v. Spire Vision*, 2014 WL

20   889483, at *3–4 (N.D. Cal. Mar. 3, 2014).

21

RESPONSE TO MOTION TO DISMISS          *Jackson v. Hanesbrands, Inc.*
10

1    immaterial error," *id.* (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*,

2    469 F.3d 348, 359 (4th Cir. 2006)), or "immaterial inaccuracies or omissions." *Id.* at

3    1062. Under this materiality standard, Gordon's claims were preempted.

4        *Virtumundo* focused on the materiality of the alleged falsehood or deception,

5    and on that question, the plaintiff's claims failed. District courts apply *Virtumundo*

6    according to its terms: where plaintiffs plead only "nondeceptive statements or

7    omissions," then their claims are preempted. *See, e.g.*, *Andrews v. Conversion*

8    *Squared Corp.*, 2020 WL 3978063, at *2–3 (C.D. Cal. May 8, 2020) ("Plaintiffs do

9    not really allege deception, period, instead taking issue with a variety of missing

10    information" in "from" fields.). Plaintiffs seeking to avoid preemption need only

11    show some degree of materiality. *See Silverstein v. Keynetics Inc.*, 2016 WL

12    7475616, at *3–4 (N.D. Cal. Dec. 29, 2016) ("Although Plaintiff alleges that the

13    email headers include false 'from' names," that is, fictitious names like "Liana

14    Christian," "those names are not materially deceptive."), *aff'd*, 727 F. App'x 244,

15    246 (9th Cir. Mar. 6, 2018) ("The e-mails' use of the LinkedIn.com domain name is

16    not materially false or misleading within the meaning of the CAN-SPAM Act."). To

17    merit preemption, a defendant under *Virtumundo* has to show it didn't do anything

18    *wrong*, in light of the state standard to be applied to its conduct, viewed against the

19    backdrop of what has traditionally been considered wrongful. *State v. Heckel*, 143

20

21

RESPONSE TO MOTION TO DISMISS            *Jackson v. Hanesbrands, Inc.*
                                                          11

1  Wash. 2d 824, 836–37, 24 P.3d 404, 411 (2001) (*en banc*) (requirement of
2  truthfulness).

3      The conclusions reached by *Harrington* and *Nike*, 2025 WL 3677479, at *1;
4  2026 WL 100731, at *3, dovetail with *Virtumundo* and the plain language of CAN-
5  SPAM, which expressly allows state law to address "falsity or deception" in
6  commercial electronic mail messages. 15 U.S.C. § 7707(b)(1). That is what CEMA
7  does. Wash. Rev. Code Ann. § 19.190.020. Thus, this case is not preempted.
8  *Harrington*, 2025 WL 3677479, at *1 ("Because CEMA's subject-line provision
9  forbids only false or misleading information (*i.e.*, 'falsity or deception'), it is not
10 preempted by CAN-SPAM."); *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at
11 *9 (W.D. Wash. Aug. 5, 2008), *aff'd*, 348 F. App'x 255 (9th Cir. 2009) ("[W]hile
12 *claims actually alleging falsity or deception under CEMA would not be preempted*,
13 Plaintiff's claims here-for at best incomplete or less than comprehensive
14 information-are for immaterial errors that may not be litigated under state law.")
15 (emphasis added); *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1045–
16 46 (E.D. Wash. 2005) ("[] Washington's Commercial Electronic Mail Act is
17 excepted from federal preemption because it prohibits 'falsity and deception'").
18 Following 15 U.S.C. § 7707(b)(1), preemption does not apply here because this case
19 concerns falsity and deception. ECF No. 1-2 at ¶¶ 4–6, 41, 43, 47, 49, 57, 63.

20
21

1    Hanes strains to contort the plain text of 15 U.S.C. § 7707(b)(1) to state that

2    "the email subject lines can *at most* be characterized as misleading…" ECF No. 16

3    at PageID# 248 (emphasis added). This is a curious argument, since any

4    "misleading" email is likewise "deceptive,"[3] and therefore exempted under the

5    CAN-SPAM's *disjunctive* exception for state laws prohibiting falsity *or* deception.

6    15 U.S.C. § 7707(b)(1). What's more, the Complaint expressly alleges falsity. ECF

7    No. 1-2 at ¶¶ 41, 62, 67, 82. So CEMA itself and the well-pled Complaint both fit

8    squarely under the plain textual matrix of state laws that CAN-SPAM left

9    undisturbed in its language. CEMA is not preempted.

10    Hanes argues that Plaintiff cannot allege that Hanes knew its subject lines

11    were false. ECF No. 16 at PageID# 249. But Plaintiff does do that. ECF No. 1-2 at

12    ¶¶ 40, 49, 59, 81. Hanes curiously cites *Adams* for its proposition on falsity. ECF

13    No. 16 at PageID# 249. But that case concerned Rule 9(b), which does not apply

14    here (and Hanes has not argued it does). *Adams v. King Cnty.*, 164 Wash. 2d 640,

15

16    [3] "Deceptive" email content is synonymous with "misleading" email content.

17    *Compare* Merriam-Webster, "Deceptive," https://www.merriam-

18    webster.com/dictionary/deceptive (accessed January 21, 2026) (listing "misleading"

19    as a synonym) *with* Merriam-Webster, "Mislead," https://www.merriam-

20    webster.com/dictionary/mislead (listing "deceive" as a synonym for "mislead").

21

RESPONSE TO MOTION TO DISMISS        *Jackson v. Hanesbrands, Inc.*

662, 192 P.3d 891, 902 (2008) (case about tortious interference with dead body).

Hanes next asserts that Plaintiff cannot allege materiality because she cannot show the subject lines were material to her. ECF No. 16 at PageID# 249. That argument gets the pleading burdens backwards. It is not Plaintiff's burden to anticipate, refute, or "plead around" Hanes' affirmative defense. *U.S. Commodity Futures Trading Comm'n v. Monex Cred. Co.*, 931 F.3d 966, 972 (9th Cir. 2018). Having elected to raise its CAN-SPAM defense under Rule 12(b)(6), it is *Hanes'* burden to show that it is "apparent from the face" of Plaintiff's Complaint that Hanes is entitled to dismissal. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). In any event, Hanes' argument confounds materiality and reliance. In assessing the former, the question is not whether Plaintiff changed her behavior in response to any particular email, but whether Hanes' misrepresentations would have an "effect on the *likely* … behavior" of its recipients. *Kousisis v. United States*, 145 S. Ct. 1382, 1396 (2025) (emphasis added) (applying wire fraud statute); *see also id.* ("[A] misrepresentation is material if a reasonable person *would attach* importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient *would likely* deem it important." (emphasis added)). So Plaintiff's perspective adds little to the analysis the Supreme Court has said applies.

The cases Hanes cites here are inapposite. *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1173 n.5 (9th Cir. 2023) (discussion of materiality

in context of *fraud* claim under False Claims Act); *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wash. 2d 157, 167, 273 P.3d 965, 970 (2012) (post-arbitration order in well drilling dispute, no discussion of materiality); *Martin v. Miller*, 24 Wash. App. 306, 309, 600 P.2d 698, 700–01 (1979) (explicit discussion of "reasonable man" standard in discussing materiality). Representations about the timing and availability of sales, discounts, and other special offers are, at bottom, representations about prices. If a 50 percent discount on a $20 product "ends tonight," that product costs $10 today and $20 tomorrow. And price is obviously a material fact—perhaps *the* material fact—affecting the behavior of ordinary consumers. ECF No. 1-2 at ¶¶ 29–39, 62. If a consumer is in the market for a product she believes will cost $20 tomorrow, she will naturally "attach importance," *Kousisis*, 145 S. Ct. at 1396, to the fact that it will cost only $10 if she buys it today.

CEMA protects consumers from unwanted spam with false or misleading information. Hanes may not like that the Washington legislature articulated a remedy for this kind of injury, but it has. Its reading of *Virtumundo* has been rejected. *Nike*, 2026 WL 100731, at *2–3. CEMA was passed in the late 1990s, and CAN-SPAM has been law since the early 2000s. Is it likelier that two laws mutually on the books for more than two decades suffer from fatal but unnoticed preemption flaws, or is it likelier that this defendant does not want to be liable under CEMA today?

## III.    CEMA is Constitutional.

In the final section of its brief, Hanes contends that CEMA violates the Dormant Commerce Clause. ECF No. 16 at PageID# 251–57. The Court should not entertain this argument – CEMA is constitutional. First, a dormant commerce clause argument is an affirmative defense, and ordinarily, affirmative defenses are not suitable for resolution at the Rule 12 stage. *The Real Est. Bar Ass'n For Mass., Inc. v. Nat'l Real Est. Info. Servs.*, 608 F.3d 110, 120 n.4 (1st Cir. 2010); *see also U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019). In general, "[t]he dormant commerce clause is meant to prevent the various states from imposing economic protectionism." 2 TREATISE ON CONST. L. § 11.1. And "[w]hile the dormant Commerce Clause is not yet a dead letter, it is moving in that direction." *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1033 (9th Cir. 2021). "Extreme caution is warranted" before a court rejects a law. *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir. 2025) (rejecting challenge to cardroom licensure). There is no economic protectionism here that runs afoul of the Clause.

Courts apply a two-tiered approach to determine if a law violates the Dormant Commerce Clause. Laws that discriminate against interstate commerce or directly regulate extra-territorial conduct are generally struck down without further inquiry. *Nat'l Pork Producers Council v. Ross*, 456 F. Supp. 3d 1201, 1207 (S.D. Cal. 2020), *aff'd*, 6 F.4th 1021 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023). A law that regulates even-handedly to effectuate a legitimate local public interest (and where the effects

1    on interstate commerce are only incidental) will be upheld unless the burden is

2    excessive in relation to the benefit. *Id.*

3        CEMA merely requires that companies communicating with Washington

4    residents be truthful. Wash. Rev. Code Ann. § 19.190.020(1)(b) (prohibiting "false

5    or misleading information in the subject line" of commercial emails). It does not

6    facially discriminate against extraterritorial conduct at all or even address

7    extraterritorial conduct. It merely requires that companies sending commercial

8    emails to Washington residents refrain from employing false or misleading subject

9    lines. This requirement applies to all companies, wherever they are located – the

10   statute hinges on the contact those companies make with people in Washington. "A

11   statute that applies both to California entities and out-of-state entities does not target

12   wholly extraterritorial activity." *Ross*, 456 F. Supp. 3d at 1207. To the extent the

13   statute is protectionist at all, it protects only the truth and reliability of messages sent

14   to consumers in Washington. CEMA's "requirement of truthfulness … does not

15   burden commerce at all but actually facilitates it by eliminating fraud and

16   deception." *State v. Heckel*, 143 Wash. 2d 824, 836, 24 P.3d 404, 411 (2001) (*en*

17   *banc*) (internal quotation marks omitted). CEMA imposes no restriction on the flow

18   of goods and services into (or out of) Washington. *Flynt*, 131 F.4th at 932–33.

19   CEMA does not violate the Constitution because it does not discriminate against

20   interstate commerce or directly regulate extra-territorial conduct. *Cf. Ross*, 598 U.S.

21

1    at 390 ("[V]irtually all state laws create ripple effects beyond their borders."). The

2    intent and practical effect of CEMA is to guard consumers from deception rather

3    than to protect industries local only to Washington. All a business must do to comply

4    is be truthful. The structure of the statute promotes consumer confidence in

5    marketing efforts and the offerings of out-of-state actors; consumers can be

6    confident that a representation a foreign company makes is true.

7         The Washington Supreme Court has already held that CEMA does not violate

8    the Dormant Commerce Clause. *Heckel*, 143 Wash. 2d at 839 ("In sum, we reject

9    the trial court's conclusion that the Act violates the dormant Commerce Clause.").

10   *Heckel* is squarely on point despite Hanes' attempts to distinguish it. Indeed, the

11   court found: (1) CEMA is not facially discriminatory ("applies even-handedly to in-

12   state and out-of-state spammers"); (2) it serves a "legitimate local purpose," *e.g.*,

13   against the well-documented "problems that spam causes"; and perhaps most

14   notably, (3) "the only burden the Act places on spammers is the requirement of

15   truthfulness, *a requirement that does not burden commerce at all* but actually

16   facilitates it by eliminating fraud and deception." *Heckel*, 143 Wash. 2d at 836

17   (citation omitted) (emphasis added). The great weight of authority over the past two

18   decades has confirmed that CEMA passes constitutional muster. The cases Hanes

19   cites are not on point. *Sam Francis Foundation* "involve[d] regulation of wholly out-

20   of-state conduct[,]" *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1324 (9th

21

Cir. 2015) (where art sales under the challenged statute had "no necessary connection with the state other than the residency of the seller"), and precedes *National Pork*. Extraterritorial effect alone does not violate the Clause. *Ross*, 598 U.S. at 374–75. The Dormant Commerce Clause addresses situations where one state targets another. *Ross*, 598 U.S. at 393 (Barrett, J., concurring in part) ("Under our dormant Commerce Clause jurisprudence, one State may not discriminate against another's producers or consumers. A law whose burdens fall incommensurately and inexplicably on out-of-state interests may be doing just that."). CEMA does not discriminate against another state's producers/consumers, so Hanes' argument fails.

This argument essentially amounts to a request by Hanes that this Court award it a license to lie. ECF No. 16 at PageID# 256 ("Requiring businesses to contact an email registrar to ascertain the residency for each email address before sending marketing emails is an onerous, disparate burden that cannot be dismissed as a burden of noncompliance."). Is Hanes saying here that it wants to continue lying to consumers in other states, and that segregating Washington email addresses is too difficult? CEMA merely requires businesses not to make things up when they send commercial emails. This is an invented scenario that has no real bearing on this case.

## IV.    Hanes' Remaining Arguments Do Not Mandate Dismissal.

Hanes next argues the Court should dismiss Plaintiff's CPA claim. ECF No. 16 at PageID# 257. A violation of CEMA is necessarily a violation of the CPA.

Wash. Rev. Code Ann. § 19.190.030; *see also Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1003 (W.D. Wash. 2019); *Heckel*, 24 P.3d at 407 ("RCW 19.190.030 makes a violation of the Act a per se violation of the Consumer Protection Act (CPA), chapter 19.86 RCW."). The CPA claim is properly pled and survives.

Finally, Hanes asserts that actual and treble damages are not available. This is a wildly premature argument at this stage. CEMA is quite clear about what damages are for successful claims. RCW 19.190.040. Hanes is simply trying to telegraph to the Court that it does not like the damages regime the law imposes. The case law Hanes cites explicitly arises from the CPA, not from CEMA. *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wash. App. 553, 565, 825 P.2d 714, 721 (1992); *Mason v. Mortg. Am., Inc.*, 114 Wash. 2d 842, 855, 792 P.2d 142, 149 (1990). These cases do not address how damages might be calculated, at a later stage in this litigation, for Plaintiff's claims under CEMA. The parties can litigate damages questions later.

## CONCLUSION

The Motion should be denied. These claims are straightforward, pled correctly, and if there were a true constitutional or preemption problem with CEMA, someone would have noticed by now. Hanes simply wants to escape liability.

1      RESPECTFULLY SUBMITTED THIS 23rd DAY OF JANUARY, 2025.

2                                          /s/Michael C. Tackeff

3                                          Gerard J. Stranch, IV*
                                           Michael C. Tackeff *(Pro Hac Vice)*
4                                          Andrew K. Murray*
                                           **STRANCH, JENNINGS & GARVEY, PLLC**
5                                          223 Rosa L. Parks Avenue, Suite 200
                                           Nashville, TN 37203
6                                          Tel.: (615) 254-8801
                                           gstranch@stranchlaw.com
7                                          mtackeff@stranchlaw.com
                                           amurray@stranchlaw.com

8
                                           /s/Samuel J. Strauss
9
                                           Samuel J. Strauss WSBA #46971
10                                         Raina C. Borrelli*
                                           **STRAUSS BORRELLI PLLC**
11                                         980 N. Michigan Avenue, Suite 1610
                                           Chicago, IL 60611
12                                         Tel.: (872) 263-1100
                                           sam@straussborrelli.com
13                                         raina@straussborrelli.com

14                                         Lynn A. Toops*
                                           Natalie A. Lyons*
15                                         Ian R. Bensberg*
                                           **COHENMALAD, LLP**
16                                         One Indiana Square, Suite 1400
                                           Indianapolis, IN 46204
17                                         Tel.: (317) 636-6481
                                           ltoops@cohenmalad.com
18                                         nylons@cohenmalad.com
                                           ibensberg@cohenmalad.com
19
                                           * *Applications for admission pro hac vice*
20                                         *forthcoming*

21

*Counsel for Plaintiff*

1

### **CERTIFICATE OF SERVICE**

2        I, the undersigned, hereby certify that on January 23, 2026, I caused the

3    foregoing to be electronically filed with the Court using the Court's CM/ECF

4    system which will send an electronic copy to all parties and/or their counsel

5    of record.

6                                                    */s/ Michael C. Tackeff*
                                                     Michael C. Tackeff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21