NICHOLAS W. BROWN
Attorney General of Washington
BEN BRYSACZ, WSBA #54683
ROBERT HYDE, WSBA #33593
CLAIRE MCNAMARA, WSBA #50097
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JESSICA L. JACKSON, on their own behalf and on behalf of others similarly situated,<br><br>      Plaintiff,<br><br>   and<br><br>STATE OF WASHINGTON,<br><br>      Plaintiff-Intervenor,<br><br>   v.<br><br>HANESBRANDS, INC.,<br><br>      Defendant. | NO. 2:25-cv-00440-SAB<br><br>PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO HANESBRANDS, INC.'S MOTION TO DISMISS<br><br>April 23, 2026<br>With Oral Argument: 1:30 p.m.<br>Via Videoconference |

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
(2:25-CV-00440-SAB)

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND .....................................................................................2

III.   ARGUMENT ..........................................................................................3

     A.  CAN-SPAM Does not Preempt CEMA Claims About Deceptive Subject Lines ...................................................................................3

        1.   A plaintiff need not plead common law tort elements to avoid preemption ....................................................................5

        2.   A plaintiff need not specifically plead fraud to avoid preemption ...................................................................................9

     B.  CEMA Does Not Violate the Dormant Commerce Clause ........11

        1.   The Supreme Court rejected Hanes' per se extraterritoriality argument in 2023 .................................................................12

        2.   Hanes does not allege and cannot establish discrimination under the dormant Commerce Clause .................................16

        3.   Hanes cannot establish a significant burden on interstate commerce nor that any such burden outweighs CEMA's benefits to consumers ........................................................17

IV.    CONCLUSION .....................................................................................20

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - i
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# TABLE OF AUTHORITIES

## Cases

*Am. Apparel & Footwear Ass'n, Inc. v. Baden,*
  107 F.4th 934 (9th Cir. 2024) ...................................................................5

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC,*
  622 F. Supp. 2d 935 (N.D. Cal. 2009) .....................................................10

*Asis Internet Servs. v. Member Source Media, LLC,*
  No. C-08-1321 EMC, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) ..............9

*Asis Internet Servs. v. Subscriberbase Inc.,*
  No. 09-3503SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010).....................10

*Beyond Sys., Inc. v. Kraft Foods, Inc.,*
  777 F.3d 712 (4th Cir. 2015).....................................................................10

*Black Star Farms LLC v. Oliver,*
  600 F.3d 1225 (9th Cir. 2010)...................................................................17

*Brown & Williamson Tobacco Corp. v. Pataki,*
  320 F.3d 200 (2d Cir. 2003)......................................................................18

*Brown v. Old Navy, LLC,*
  567 P.3d 38 (Wash. 2025)...............................................................7, 8, 13

*Carmickle v. Comm'r, Soc. Sec. Admin.,*
  533 F.3d 1155 (9th Cir. 2003)...................................................................17

*Conway v. Taylor's Ex'r,*
  66 U.S. 603 (1862).....................................................................................11

*Edgar v. MITE Corp.,*
  457 U.S. 624 (1982)...................................................................................16

*Elcon Const., Inc. v. E. Washington Univ.,*
  273 P.3d 965 (Wash. 2012)..........................................................................9

*Gordon v. Virtumundo, Inc.,*
  575 F.3d 1040 (9th Cir. 2009).........................................................3, 4, 5, 6, 7

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - ii
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Harbers v. Eddie Bauer, LLC*,
   415 F. Supp. 3d 999 (W.D. Wash. 2019)..........................................................10

*Harrington v. Vineyard Vines, LLC*,
   No. C25-1115TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) .........2, 6

*Hartman v. United Bank Card, Inc.*,
   291 F.R.D 591 (W.D. Wash. 2013) ............................................................16

*Healy v. Beer Institute, Inc.*,
   491 U.S. 324 (1989)................................................................12, 14, 15

*Hickey v. Voxernet LLC*,
   887 F. Supp. 2d 1125 (W.D. Wash. 2012).....................................................4

*Hoang v. Reunion.com, Inc.*,
   No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ...........9

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
   803 F.3d 389 (9th Cir. 2015).....................................................................11

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
   No. C08-1733JLR, 2009 WL 10676391 (W.D. Wash. May 27, 2009)...........8

*Ma v. Nike, Inc.*,
   No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026).......2, 6, 10

*MaryCLE, LLC v. First Choice Internet, Inc.*,
   890 A.2d 818 (Md. Ct. Spec. App. 2006).....................................................18

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996).....................................................................................4

*Meilleur v. AT & T Inc.*,
   No. 11–1025 MJP, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011).............4

*Minnesota v. Clover Leaf Creamery Co.*,
   449 U.S. 456 (1981)...................................................................................20

*Nat'l Pork Producers Council v. Ross*,
   598 U.S. 356 (2023)................................ 11, 13, 14, 15, 16, 17, 19

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - iii
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
  469 F.3d 348 (4th Cir. 2006)................................................................5, 6, 7, 10

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .............................................................................15, 16

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970) ...................................................................................17

*Rocky Mtn. Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013)...................................................................17

*Rosenblatt v. City of Santa Monica*,
  940 F.3d 439 (9th Cir. 2019).....................................................................18

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015)...................................................................12

*Scott v. Cingular Wireless*,
  161 P.3d 1000 (Wash. 2007)........................................................................3

*State v. Heckel*,
  24 P.3d 404 (Wash. 2001)..........................................................................19

*Stengel v. Medtronic*,
  704 F.3d 1224 (9th Cir. 2013).....................................................................4

*Strassheim v. Daily*,
  221 U.S. 280 (1911) ...................................................................................16

*Sullivan v. Oracle Corp.*,
  662 F.3d 1265 (9th Cir. 2011).....................................................................17

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.*,
  No. CV-18-02980-PHX-DWL, 2020 WL 6395442 (D. Ariz. Nov. 2, 2020)...4

*Truesdell v. Friedlander*,
  80 F.4th 762 (6th Cir. 2023) ......................................................................19

*Wagner v. Spire Vision*,
  No. C 13-04952 WHA, 2014 WL 889483 (N.D. Cal. Mar. 3, 2014) ..............9

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - iv
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008) ............................................................................12

Statutes

15 U.S.C. § 7707(b)(1) ...........................................................................5

Wash. Rev. Code § 19.190.020(1)...........................................................12

Wash. Rev. Code § 19.190.020(1)(a) ......................................................6

Wash. Rev. Code § 19.190.020(1)(b)..............................................2, 5, 13

Wash. Rev. Code § 19.190.030(3)...........................................................20

Other Authorities

H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on
   H.B. 2752 (Wash. 1998) ......................................................................2

S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg.
   Sess., Senate Bill Report on H.B. 1037 (Wash. 1999) .........................2

S. Rep. No. 108-102 (2003)....................................................................6

Constitutional Provisions

U.S. Const. art. VI, cl. 2 .........................................................................3

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - v
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## I.    INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from deceptive commercial email messages and makes sending them a violation of the Washington Consumer Protection Act (CPA). The federal Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) does not preempt CEMA. In arguing otherwise, Defendant Hanesbrands, Inc. (Hanes) tries to impose on plaintiffs a heightened pleading standard that is not found anywhere in either CEMA or CAN-SPAM. CAN-SPAM's preemption savings clause specifically carves out and preserves state statutes like CEMA that prohibit misleading or deceptive emails. Hanes' cited authority does not support its argument that CEMA plaintiffs must plead fraud or elements of another tort to avoid preemption, nor does Hanes acknowledge the many courts that have rejected that argument.

CEMA also does not discriminate against out-of-state interests or otherwise violate the dormant Commerce Clause. Like many state laws, CEMA's protection may, at times, have a practical effect on people or companies outside Washington, but that occasional extraterritorial impact does not offend the United States Constitution. Hanes' arguments misunderstand federal constitutional law and the operation of the interconnected modern economy.

This Court should deny the motion, just as other Washington federal courts have done in two recent orders. *See Harrington v. Vineyard Vines, LLC,*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 1
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

No. C25-1115TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025), *reconsideration denied sub nom.*, No. C25-1115 TSZ, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Ma v. Nike, Inc.*, No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026).

## II.    BACKGROUND

Adopted in 1998, CEMA's application to email is narrow. At issue here, CEMA prohibits a person from sending email marketing messages containing "false or misleading information," specifically "in the subject line," to email addresses the sender knows or has reason to know belongs to Washington State residents. Wash. Rev. Code § 19.190.020(1)(b). The Attorney General's Office reported to the Legislature that during the five-month period before CEMA's passage, of 322 complaints received about unsolicited email, many were commercial advertisements and "spam [was] the highest category of consumer complaints" the office received overall. H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on H.B. 2752 (Wash. 1998). Legislative testimony emphasized that CEMA "allows expansion of Internet usage while curtailing abuses before they reach crisis." S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 2
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

### III.    ARGUMENT

The State intervenes for the limited purpose of defending CEMA's constitutionality pursuant to 28 U.S.C. § 2403(b). It takes no position with respect to other issues raised in the litigation, including whether the email subject lines at issue are false or misleading as a matter of law. Overall, the State agrees with the arguments regarding CEMA's constitutionality in Plaintiff's response brief. ECF No. 23 at 9-19. The State writes separately, however, to offer the perspective of the State's chief law enforcement officer as to CEMA's constitutionality, its proper interpretation, and the importance of private enforcement of consumer protection statutes like CEMA. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (observing "[p]rivate actions by private citizens are now an integral part of CPA enforcement" and that consumers "bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests").

### A.    CAN-SPAM Does not Preempt CEMA Claims About Deceptive Subject Lines

Preemption is a constitutional issue warranting the State's intervention under Rule 5.1. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (citing U.S. Const. art. VI, cl. 2) (observing preemption doctrine "derives from the Supremacy Clause of the United States Constitution"); *ThermoLife Int'l LLC v. NeoGenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2020 WL 6395442,

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 3 (2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

at *16 (D. Ariz. Nov. 2, 2020) (stating because preemption claims are constitutional in nature, state must be allowed to address such claims).

Any preemption analysis begins with the "presumption against supplanting the historic police powers of the States by federal legislation unless that is the clear and manifest purpose of Congress." *Virtumundo*, 575 F.3d at 1060 (cleaned up). "This presumption against preemption leads us to the principle that express preemption statutory provisions should be given narrow interpretation." *Id*. (cleaned up). Hanes, as the party "seeking to invalidate a state law based on preemption bear[s] the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic,* 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (cleaned up). "Consumer protection is an area of traditional state authority creating a presumption against federal preemption." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) (citing *Meilleur v. AT & T Inc.,* No. 11–1025 MJP, 2011 WL 5592647 at *3 (W.D. Wash. Nov. 16, 2011)). Thus, the presumption against preemption applies to both the *existence* and *scope* of the alleged preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

As relevant here, CAN-SPAM's preemption clause is extremely limited. While it states that the statute supersedes any state law that "regulates the use of electronic mail to send commercial messages," it expressly exempts "any such statute" that "prohibits falsity or deception in any portion of a commercial

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 4
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The CEMA provision at issue here does just that, prohibiting any email that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). This plain language should end the analysis. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024) (to interpret an express preemption clause, a court is required "to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law").

**1. A plaintiff need not plead common law tort elements to avoid preemption**

Despite CAN-SPAM's plain language, Hanes presses a restrictive reading of the preemption clause, asserting it saves only traditional tort theories like fraud from preemption. ECF No. 16 at 15-21 (relying primarily on *Virtumundo*). This is incorrect as a matter of law and cannot be squared with Hanes' own authorities.

Sixteen years ago, *Virtumundo* addressed the scope of CAN-SPAM's preemption clause as an issue of first impression in this circuit, relying in part on the then-only federal circuit court decision addressing the clause: *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). *Virtumundo,* 575 F.3d at 1059-60. However, neither *Virtumundo* nor *Omega* held that common law torts like fraud are the only state law claims saved from the CAN-SPAM preemption clause. To the contrary, both cases *confirm* the exception applies broadly to "traditionally tortious or wrongful conduct." *Virtumundo*,

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 5
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

575 F.3d at 1062 (quoting *Omega*, 469 F.3d at 354) (emphasis added). Far from supporting Hanes' arguments, *Virtumundo* explained state law claims about deceptive email subject lines were not preempted. *Id*. at 1062 (observing legislative intent that "a State law prohibiting *fraudulent or deceptive* headers, subject lines, or content in commercial e-mail would not be preempted").

Thus, because CEMA's subject-line provision prohibits only "falsity" or "deception" in the subject-line of commercial e-mails, it "falls squarely within this area reserved to the States[.]" *Harrington*, 2025 WL 3677479, at *1; *see also Ma*, 2026 WL 100731, at *2 (same). This conclusion is supported by the Senate Report accompanying CAN-SPAM, which explained that although the purpose of the CAN-SPAM Act was to impose a single national standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." S. Rep. No. 108-102, at 21-22 (2003).

In any event, *Virtumundo* did not directly address deceptive email subject lines. Instead, it considered whether CAN-SPAM preempted the plaintiff's claims under CEMA's provision (1)(a), which prohibits email that "misrepresents or obscures" information about the sender. Wash. Rev. Code § 19.190.020(1)(a). That provision is not at issue here. Unlike this case, the *Virtumundo* plaintiff admitted none of the emails at issue misled or deceived him

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 6
(2:25-CV-00440-SAB)

"in any way." *Virtumundo*, 575 F.3d at 1063. Rather, he asserted the sender should have been "Virtumundo" rather than the abbreviated domain names they used. *Id*. at 1063-64. The Ninth Circuit concluded that such "technical" allegations of "non-deceptive" inaccuracies or omissions are "at best" claims for "incomplete or less than comprehensive information." *Id*. at 1064. The *Omega* court likewise was focused on state law claims that could potentially impose strict liability for "insignificant inaccuracies" or "bare error" rather than "falsity or deception." 469 F.3d at 352-56. This case, in contrast, is about provision 1(b), which only prohibits "false or misleading information" and cannot be read to impose liability for simple mistakes. *Virtumundo* and *Omega* thus do not support preemption.

Further, in *Virtumundo*, the Ninth Circuit acknowledged that CEMA's statutory framework at least suggested CEMA "extends only to deceptive commercial e-mail" rather than non-deceptive acts or mere clerical errors. 575 F.3d at 1059, n.17. The *Virtumundo* court thus concluded that "state courts may ultimately mold CEMA's broad language so as to cabin its breadth or interpret the law in conformity with federal legislation." *Id*. at 1059. Last year, following certification from the Western District of Washington, the Washington State Supreme Court did just that in *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 7
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

In *Brown*, the court confirmed that CEMA's subject line provision does not prohibit technical errors or "mere puffery." *Id*. The *Brown* court held CEMA's subject line provision addresses deceptive "representations of fact—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions." *Id.* In short, CEMA's subject line provision prohibits false or deceptive statements about facts that would be important to consumer decision making, and to the extent there was any question, *Brown* thus harmonizes CEMA with CAN-SPAM.

Tellingly, Hanes does not meaningfully address the *Brown* opinion, instead arguing that Plaintiff must "at least demonstrate that the subject lines were material ***to her***" to avoid preemption. ECF No. 16 at 20. This argument for pleading individualized reliance cannot stand after *Brown*, where the Washington State Supreme Court held that CEMA's subject line provision excludes puffery or "banal hyperbole" but does prohibit claims premised upon misrepresentations of fact to Washington consumers. 567 P.3d at 47. Nothing in the *Brown* opinion requires an individualized assessment or pleading of reliance by each plaintiff.

Hanes' reliance upon *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009), to support its argument is mystifying. In that case, Judge Robart rejected the very same argument Hanes advances here, i.e., that a plaintiff is required to allege

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 8
(2:25-CV-00440-SAB)

elements of fraud or similar tort elements to bring a CEMA claim. Hanes' citation to *Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 970 (Wash. 2012), fares no better. That case dealt with a "fraudulent inducement" claim, not CEMA.

### 2.    A plaintiff need not specifically plead fraud to avoid preemption

Hanes spends considerable time addressing the elements of fraud and other torts in its motion and reply. But consumer protection statutes such as CEMA do not sound in fraud, and "[t]he great weight of district court and state court decisions" reject a requirement that consumers plead "all the elements of common law fraud," including damages or reliance, to avoid preemption of their anti-spam law claims. *Wagner v. Spire Vision*, No. C 13-04952 WHA, 2014 WL 889483, at *2-4 (N.D. Cal. Mar. 3, 2014) (collecting cases); *Asis Internet Servs. v. Member Source Media, LLC*, No. C-08-1321 EMC, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010) (considering California's subject line provision, *Virtumundo*, and CAN-SPAM's preemption clause, and holding plaintiff "need not plead reliance and damages in order for its claim to be excepted from preemption"); *Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535, at *6 (N.D. Cal. Mar. 31, 2010) (reversing dismissal under *Virtumundo*, holding failure to allege detrimental reliance was not proper grounds for dismissal).

Indeed, Congress explicitly chose not to use the word "fraud" in the CAN-SPAM preemption provision at issue here, even though it did in the very next

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 9
(2:25-CV-00440-SAB)

provision. *Ma*, 2026 WL 100731, at \*3 (citing *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) ("Congress . . . is certainly familiar and with the word 'fraud' and choose not to use it; the words 'falsity *or* deception' suggest broader application . . . Congress utilized the word 'fraud' in the very next subsection but not in the savings clause.") (citation omitted); *Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-3503SC, 2010 WL 1267763, at \*11 (N.D. Cal. Apr. 1, 2010) ("The explicit language of the preemption clause betrays no intention by Congress to limit state regulation to the simple codification of common law fraud in its purest form.")). This Court should not impose extraneous non-statutory fraud standards here.

For similar reasons, the Fourth Circuit concluded that neither California nor Maryland's anti-spam statutes were preempted despite neither one requiring pleading or proof of the elements of fraud. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) (citing *Omega*, 469 F.3d 348). The Western District made a similar finding when concluding a plaintiff had Article III standing when making a CEMA claim: "[t]he harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019). The Court should likewise reject Hanes' effort here to impose additional pleading requirements on CEMA plaintiffs.

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 10 (2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**B.    CEMA Does Not Violate the Dormant Commerce Clause**

Hanes' Commerce Clause argument is likewise contrary to governing authority. Hanes' primary argument—which asks this Court to invalidate state law for its extraterritorial *impact* based on mere speculation and hypotheticals—relies on a line of cases that is of limited value following the Supreme Court's decision in *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023). But state laws only violate the dormant Commerce Clause when they discriminate in favor of their own residents and economic interests, to the detriment of out-of-state residents or interests. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015). "Preventing state officials from enforcing a democratically adopted state law in the name of the dormant Commerce Clause is a matter of 'extreme delicacy,' something courts should do only 'where the infraction is clear.'" *Nat'l Pork Producers*, 598 U.S. at 390 (quoting *Conway v. Taylor's Ex'r*, 66 U.S. 603, 634 (1862)). Thus, federal courts must utilize "extreme caution" before deploying the "implied authority" of the dormant Commerce Clause. *Nat'l Pork Producers*, 598 U.S. at 390 (internal quotation marks omitted). Applying the correct standard, Hanes fails to show that CEMA is discriminatory or to otherwise show that CEMA substantially burdens interstate commerce.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 11
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**1.    The Supreme Court rejected Hanes' per se extraterritoriality argument in 2023**

Hanes' primary dormant Commerce Clause challenge to CEMA is a facial challenge based upon the argument that CEMA directly controls commerce occurring entirely outside of Washington's borders. *See* ECF No. 16 at 21-24. In support, Hanes relies primarily upon *Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989), and other cases relying on *Healy*, for the claim that such statutes are invalid. *Id.* at 22-25 (quoting *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015)). But Hanes' reliance on the *Healy* line of cases is misplaced for two reasons.

First, Hanes' claim that CEMA directly controls commerce occurring entirely out of Washington is based upon hypotheticals about Washington residents receiving emails while traveling out of state. ECF No. 16 at 22. Hanes' hypotheticals and speculation underscore why facial challenges are so disfavored. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, 450–51 (2008) (facial challenges are disfavored because they "often rest on speculation," "run contrary to the fundamental principle of judicial restraint" and "threaten to short circuit the democratic process"). Hanes' arguments ignore the plain language of CEMA, which requires either (1) "a computer located <u>in Washington</u>" or (2) "an electronic mail address that the sender knows, or has reason to know, is held by <u>a Washington resident</u>." Wash. Rev. Code § 19.190.020(1) (emphasis added).

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 12 (2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

As to Hanes' concern that a Washington resident may receive an email while temporarily out of state, this ignores the clear Washington connection required by CEMA—the requirement the email is sent to a Washington resident. *See, e.g.*, *Brown*, 567 P.3d at 45 (CEMA "targets a specific deceptive commercial practice: sending Washington residents commercial e-mails that contain 'false or misleading information in the subject line[s].'") (quoting Wash. Rev. Code § 19.190.020(1)(b)). This scenario does not offend the Constitution, and Hanes' hypotheticals cannot change the fact that Wash. Rev. Code § 19.190.020(1)(b) is focused upon activity targeting Washington consumers. Simply put, a company that directs its commercial email to Washington residents does not get a free pass from compliance with Washington law when the resident is temporarily traveling out of state.

Second, given the unquestionable connection to Washington residents, Hanes' argument goes to CEMA's alleged extraterritorial *impact*, which is an insufficient basis to invalidate a state law under the dormant Commerce Clause. In *National Pork Producers*, the United States Supreme Court unanimously rejected the idea that *Healy* stands for the almost per se rule against extraterritoriality that Hanes advocates for here. 598 U.S. at 368. Hanes fails to discuss *National Pork Producers*' analysis of *Healy* and never acknowledges that it is dispositive of its arguments.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 13
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

There is no blanket rule against state statutes with extraterritorial effects. If there was such a rule, it is hard to imagine how the interconnected modern economy would continue to function. *Nat'l Pork Producers*, 598 U.S. at 374-75 ("In our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior."). It is true that historically, courts observed that the extraterritorial application of certain state laws raised dormant Commerce Clause concerns. In *Healy*, the Supreme Court noted that in some situations "a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority." 491 U.S. at 336.

In 2023, however, the Supreme Court clarified that extraterritorial effects alone do not violate the dormant Commerce Clause. Petitioners in *National Pork Producers v. Ross* challenged California's law governing farm conditions for pork sold in California. Petitioners conceded the law did not "seek[] to advantage in-state firms or disadvantage out-of-state rivals." *Nat'l Pork Producers*, 598 U.S. at 370. According to the Court, this left them in a "tough spot" pursuing "two more ambitious theories." *Id.* at 371.

> In the first, petitioners invoke what they call "extraterritoriality doctrine." They contend that our dormant Commerce Clause cases suggest an additional and "almost *per se*" rule forbidding enforcement of state laws that have the "practical effect of controlling commerce outside the State," even when those laws do not purposely discriminate against out-of-state economic interests. Petitioners further insist that Proposition 12 offends this "almost *per*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 14
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*se*" rule because the law will impose substantial new costs on out-of-state pork producers who wish to sell their products in California.

*Id.* (citations omitted). In support of those arguments, petitioners cited *Healy*, the same case Hanes relies on here.

The Court then squarely rejected the argument that *Healy* stands for the *per se* proposition that laws with extraterritorial effects violate the dormant Commerce Clause. Concluding that "petitioners read too much into too little," the Court explained that the challenged statutes in *Healy* and other extraterritoriality cases "had a *specific* impermissible 'extraterritorial effect'— they deliberately 'prevent[ed out-of-state firms] from undertaking competitive pricing' or 'deprive[d] businesses and consumers in other States of 'whatever competitive advantages they may possess.'" *Nat'l Pork Producers*, 598 U.S. at 374 (quoting *Healy*, 491 U.S. at 338-39).

In rejecting an almost per se rule against extraterritoriality, the Court clarified that other express provisions of the Constitution, including the Due Process Clause, may be relevant to the analysis. *Nat'l Pork Producers*, 598 U.S. at 375-76 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985)). Even under the Due Process Clause, CEMA's extraterritorial application to Washington residents temporarily outside the state's borders is constitutional, because Washington undoubtedly has a state interest in protecting its consumers, including those who are temporarily outside the state. *See Phillips Petroleum*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 15
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Co.*, 472 U.S. at 818 (under the Due Process Clause, a state may apply its law as long as it has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair"); *Nat'l Pork Producers*, 598 U.S. at 375-76 (observing that a State's extraterritorial reach ends at "acts committed 'outside [the first State's] jurisdiction' that are not 'intended to produce [or that do not] produc[e] detrimental effects within it"') (quoting *Strassheim v. Daily*, 221 U.S. 280, 285 (1911)). Cases striking down laws under these provisions are limited to those instances where the challenged regulation governs extraterritorial conduct involving individuals "with *no* connection to the State." *Nat'l Pork Producers*, 598 U.S. at 376 n.1 (distinguishing *Edgar v. MITE Corp.*, 457 U.S. 624 (1982)). Accordingly, they are vastly different from CEMA, which protects Washington consumers and requires either a computer located in Washington or an email sent to a Washington resident. Furthermore, Hanes' citation to *Hartman v. United Bank Card, Inc.*, 291 F.R.D 591 (W.D. Wash. 2013) is misplaced. ECF No. 16 at 23. That case was decided years before *National Pork Producers*, and relied on *Healy* for the purported rule against extraterritoriality.

   **2.    Hanes does not allege and cannot establish discrimination under the dormant Commerce Clause**

   Applying the proper standard, the threshold question in the dormant Commerce Clause inquiry is whether the law is discriminatory. *See Rocky Mtn.*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 16
(2:25-CV-00440-SAB)

*Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013). In this context, the term "discrimination" has a specific meaning: "'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Rocky Mtn. Farmers Union*, 730 F.3d at 1087 (citation omitted).

It is well established that the "party challenging the statute bears the burden of showing discrimination." *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010). Despite this, Hanes fails to address discrimination in either its motion or reply. For example, Hanes' brief does not explain how CEMA could benefit Washington economic interests at the expense of out-of-state interests. Hanes has thus waived any argument on this issue. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 n.2 (9th Cir. 2003) (concluding an issue not argued with specificity in briefing will not be addressed).

### 3. Hanes cannot establish a significant burden on interstate commerce nor that any such burden outweighs CEMA's benefits to consumers

Because CEMA is a non-discriminatory law, it is presumptively valid unless any burden on interstate commerce is "'clearly excessive in relation to the putative local benefits.'" *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This weighing of the burden and benefits of a non-discriminatory law is often referred to as "*Pike* balancing." *See Nat'l Pork Producers*, 598 U.S. at 393 (Barrett, J., concurring). As the Ninth Circuit has recognized, "only a small number of cases

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 17
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

invalidating laws under the dormant Commerce Clause have involved laws that were genuinely nondiscriminatory but still imposed a clearly excessive burden on interstate commerce." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020) (cleaned up). *Pike* balancing "does not invite courts to second-guess legislatures by estimating the probable costs and benefits of the statute." *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003). Rather, the Court must "presume the law serves the [state's] legitimate interests." *Rosenblatt*, 940 F.3d at 452. Hanes, as the party challenging CEMA, bears the burden on this issue. *Id.*

Attempting to meet this burden, Hanes takes aim at the very thing it seeks to read out of the statute, the requirement of Washington residency, by claiming that a large, sophisticated company like Hanes could not possibly determine residency information without contacting an email registrar first—a step that Hanes calls "an onerous, disparate burden." ECF No. 16 at 26. Yet the company pointedly ignores that other states require the exact same thing without running afoul of CAN-SPAM or the Constitution. *See, e.g.*, *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 843 (Md. Ct. Spec. App. 2006) (Maryland antispam law "only mandates that all email addressed to Maryland residents be truthful and non-deceptive"). Any hypothetical "burden" on Hanes is merely the burden to comply with the law, and the solution to is simply to not send thousands of emails with false or misleading subject lines. Indeed, in *State v. Heckel*,

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 18 (2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

24 P.3d 404, 406 (Wash. 2001), *cert. denied*, 534 U.S. 997 (2001), the Washington State Supreme Court held that CEMA's prohibition of misleading commercial email messages "does not unduly burden interstate commerce." The *Heckel* court recognized that extraterritoriality may implicate jurisdictional questions, but that those questions are unrelated to the dormant Commerce Clause analysis and should be analyzed under a separate framework. *Id.* at 412. In any event, *Heckel* was also decided before *National Pork Producers* clarified the relationship between extraterritoriality and the dormant Commerce Clause.

Because Hanes has failed to show that CEMA substantially burdens interstate commerce, *Pike* balancing is unnecessary. The plurality opinion in *National Pork Producers* "held that courts should not even attempt to quantify a state law's local 'benefits' or compare those benefits to the law's costs unless a challenger has first shown that the law inflicts 'substantial burdens' on interstate commerce[.]" *Truesdell v. Friedlander*, 80 F.4th 762, 774 (6th Cir. 2023) (emphasis added) (citing 598 U.S. at 383-89) *cert. denied*, 144 S. Ct. 1344 (2024), *and cert. denied*, 144 S. Ct. 1346 (2024).

Nevertheless, should the Court choose to consider CEMA's putative local benefits, those benefits are plain. As explained herein and as detailed by the Washington Legislature, the State has its own interests in protecting Washington consumers, and the U.S. Congress has affirmatively carved out breathing room for states' traditional consumer protection statutes in this space. Those interests

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 19 (2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

include avoiding the harassment of and potential cost to consumers by unwanted commercial email messages, which are "matters vitally affecting the public interest." Wash. Rev. Code § 19.190.030(3). And "[c]ourt[s] will assume that the objectives articulated by the legislature are actual purposes of the statute, unless an examination of the circumstances forces [courts] to conclude that they could not have been a goal of the legislation." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n. 7 (1981) (internal quotation omitted).

In sum, even under the *Pike* balancing test, CEMA does not violate the dormant Commerce Clause.

## IV.    CONCLUSION

The State respectfully requests that the Court deny Hanes' constitutional challenges to CEMA.

DATED this 10th day of February, 2026.

NICHOLAS W. BROWN
Attorney General

*s/ Ben Brysacz*
BEN BRYSACZ, WSBA #54683
ROBERT HYDE, WSBA #33593
CLAIRE MCNAMARA, WSBA #50097
Assistant Attorney General
Attorneys for Plaintiff-Intervenor State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-474-7744
ben.brysacz@atg.wa.gov
robert.hyde@atg.wa.gov
claire.mcnamara@atg.wa.gov

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 20
(2:25-CV-00440-SAB)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744